RALPH A. FAILLACE, Appellant, v PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Respondent.

First Department, July 2, 1987

**APPEARANCES OF COUNSEL**

*Eleanor Jackson Piel* for appellant.

*Anne M. Tannenbaum* of counsel *(Arthur P. Berg* and *James Begley* with her on the brief; *Patrick J. Falvey,* attorney), for respondent.

**OPINION OF THE COURT**

Ross, J.

The plaintiff, Mr. Ralph A. Faillace (Mr. Faillace), in this action for wrongful discharge, appeals from the dismissal of his amended complaint, which he brought against the Port Authority of New York and New Jersey (PA), alleging that he was wrongfully discharged.

In 1921, the PA was created, as a bi-State public authority, "by compact between [the] States [of New York and New Jersey] and approved by Congress as required by the United States Constitution (L. 1921, ch. 154, § 1; N.J.S.A., § 32:1-1 *et seq.;* 42 U.S. Stat. 174; U.S. Const., art. I, § 10, subd. 3)" *(Matter of Agesen v Catherwood,* 26 NY2d 521, 524 [1970]). The purpose of the PA is to develop public transportation, terminal, and other facilities of commerce within the legislatively defined Port District. Currently, as a result of the 1921 Compact and subsequently enacted bi-State legislation, the PA's facilities include 4 airports, 2 heliports, 4 interstate bridges, 2 interstate tunnels, the interstate Port Authority Trans-Hudson Railroad (PATH), 2 bus terminals, 7 marine terminals, 2 truck terminals and the World Trade Center.

Mr. Faillace entered the employ of the PA in December 1967, when he was hired, as a professional/managerial employee, at the middle management level B-7 of real estate agent II, to work in the Real Estate Department. At the time he became a PA employee, Mr. Faillace was approximately 35 years of age, held a Bachelor of Business Administration degree in Real Estate and a Master of Business Administra-

tion degree in Finance, and had 17 years of finance and real estate experience in private industry.

Thereafter, when the PA's Real Estate Department was abolished in 1974, Mr. Faillace was carried as an excess employee, until he was reassigned to another permanent position, as a senior property representative, in the PA's Management Services Department. Subsequently, in 1979, Mr. Faillace's position in the Management Services Department was abolished, and, as a result, he was reassigned to a position, as a senior property representative, B-7 level, in the Development & Rentals Division of the PA's World Trade Department. He held this authorized, budgeted, permanent position in the World Trade Department, from July 1979 to October 1980.

Our examination of the record indicates that, while Mr. Faillace was working in the World Trade Department, his PA supervisors, beginning in the spring of 1980, and continually thereafter, advised him of their dissatisfaction with the manner in which he performed his duties. Some time in or about September 1980, these supervisors decided to implement the relevant PA procedures, pursuant to PA Instructions (PAI) 20-1.11, entitled "REMOVAL OF UNCLASSIFIED AND PROFESSIONAL AND MANAGERIAL EMPLOYEES", to terminate Mr. Faillace's employment, because of his unsatisfactory job performance.

After our review of the record and legal authority, we find that employment of individuals at the PA is governed by the procedures adopted by the PA's Board of Commissioners (Board) and their designees, since article XIV of the 1921 Compact creating the PA states, in pertinent part, "[t]he port authority * * * may appoint such officers and employees as it may require for the performance of its duties, and shall fix and determine their qualifications and duties" (McKinney's Uncons Laws of NY § 6415 [Port Authority Compact Art XIV; L 1921, ch 154, § 1]). Effective February 13, 1969, the PA Board approved an amendment to General Resolution 76, wherein they provided that the employment of professional/managerial employees, such as Mr. Faillace, could be terminated for any cause or reason. Applying the provisions of article XIV of the 1921 Compact to PA General Resolution 76, we find that General Resolution 76 is a legislative act that does not confer any rights on professional/managerial employees, which are protected by the Contract Clause (art I, § 10, cl 1) of the US Constitution (note, see in this connection, Dodge v Board of Educ., 302 US 74 [1937]; Cook v City of Binghamton,

48 NY2d 323, 330-331 [1979]; *Spina v Consolidated Police & Firemen's Pension Fund Commn.,* 41 NJ 391, 400, 197 A2d 169 [1964]).

When in 1969, the PA Board amended General Resolution 76, the Board also directed the PA Executive Director to file procedures to effectuate the termination of the employment of professional/managerial employees. Those procedures, which were filed in 1969, were subsequently amended and incorporated in PAI 20-1.12 in 1970; and, thereafter, they were amended and incorporated in PAI 20-1.11, dated August 20, 1975.

PAI 20-1.11 provides, in pertinent part, that when a professional/managerial employee's department head sends a memorandum to the PA Executive Director, which recommends, based upon stated reasons, the termination of the employment of such employee, the Executive Director shall either reject that recommendation or forward it to the PA Personnel Director for processing. If the recommendation is sent to the Personnel Director, that person shall notify the employee in writing of the recommendation to remove him or her, including the reasons, and advise the employee that he or she may request, within 14 days thereafter, an appearance before a department head, other than the department head who made the recommendation. In the event that the employee requests an appearance before the independent department head, he or she may appear in person or by an authorized representative. At the proceeding before the independent department head, the basis of the recommended action will be explained, and the employee may personally, or through an authorized representative, make a written or oral statement in response. Within 10 days after such appearance, the independent department head shall submit a written report to the Executive Director, who shall then notify the employee in writing of his or her determination.

The PA's personnel manual, entitled: "Guide for Port Authority Personnel", has been examined by us, and we find that it does not in and of itself, confer any contract rights on employees to a specific type of hearing procedure, apart from that set forth *supra,* in PAI 20-1.11.

It is undisputed that Mr. Faillace's position of senior property representative, which he held in the World Trade Department, was designated a professional/managerial position in the PA.

In October 1980 an agreement was negotiated between Mr. Faillace and representatives of the PA, which resulted in Mr. Faillace's supervisors ceasing their efforts to terminate him, pursuant to PAI 20-1.11, while he was given an opportunity to find a permanent position in a PA department, other than the World Trade Department. The terms of this agreement are set forth in a memorandum, dated October 10, 1980, and Mr. Faillace signed it. Our examination of this signed memorandum indicates that Mr. Faillace, in exchange for receiving a six-month temporary assignment to the Regional Development Division of the Planning and Development Department of the PA, vacated his permanent position in the World Trade Department, waived his rights to an interview and hearing before discharge, under PAI 20-1.11, and promised to resign his employment with the PA, if he failed to obtain a permanent position within the PA in six months.

By the end of the six-month period, mentioned *supra* in the October 10, 1980 memorandum, Mr. Faillace had been unable to obtain permanent placement, either within or outside of the PA, and he did not submit his promised resignation from the PA. When this occurred, Mr. Faillace was advised by his PA supervisors that they would pursue their previously proposed recommendation to terminate him. However, again Mr. Faillace's PA supervisors ceased their efforts to terminate him, based upon another agreement negotiated between Mr. Faillace and them.

The terms of this second agreement are contained in a memorandum, dated May 1, 1981, and signed by Mr. Faillace. Our examination of this signed May memorandum indicates that Mr. Faillace, upon the basis of his being given another temporary assignment in the PA's Tunnels, Bridges and Terminals Department, submitted his unconditional and irrevocable resignation from the PA, which was to take effect February 19, 1982, if he was not successful in obtaining permanent employment in the PA by that date; and, in addition, Mr. Faillace once again specifically waived his rights under PAI 20-1.11. Furthermore, in this May memorandum, the PA agreed to make available to Mr. Faillace their outplacement services, if he desired to use same.

On January 20, 1982, as the termination date approached, Mr. Faillace sought to withdraw his previously submitted unconditional and irrevocable resignation, but this revocation was not accepted by the PA, and Mr. Faillace's employment

with the PA was terminated on February 19, 1982, as provided in the May 1, 1981 memorandum, discussed *supra*.

Late in February 1982, by service of a summons and complaint, plaintiff Mr. Faillace commenced the instant action for wrongful discharge of an allegedly tenured employee against defendant PA. Thereafter, by leave of the court, plaintiff served an amended complaint.

Plaintiff seeks in this amended complaint, which contains four causes of action, such relief as the setting aside of his letter of resignation, reinstatement as a permanent employee, and monetary damages. The four causes of action state, in substance, as follows: the first cause of action alleges plaintiff was deprived of due process because he was discharged without a hearing; the second cause of action alleges plaintiff's discharge constituted a prima facie tort, since it was wrongful and abusive; the third cause of action alleges breach of contract; and, the fourth cause of action alleges plaintiff was discharged, upon the basis of age discrimination, in violation of the New York Executive Law § 296, entitled: "Unlawful discriminatory practices".

Following the bringing of this action, and while it was pending, the plaintiff filed a claim for unemployment insurance benefits, and was declared eligible for them. In response, the defendant employer objected to this award of benefits, on the ground that the plaintiff had voluntarily left PA employment, as a result of his unconditional and irrevocable resignation, which is contained in the May 1, 1981 memorandum, mentioned *supra*. After a hearing, an Unemployment Insurance Administrative Law Judge (Administrative Law Judge) found, in substance, that defendant had forced plaintiff to resign his employment under pressure, and, had then rejected plaintiff's attempt to withdraw the resignation. In view of these findings, the Administrative Law Judge ruled that the plaintiff's termination, under the circumstances, was nondisqualifying, and plaintiff was entitled to unemployment insurance benefits. Subsequently, the Unemployment Insurance Appeal Board (Appeal Board) affirmed this decision.

After issue was joined in the subject action, plaintiff moved for partial summary judgment on the first cause of action, which, as mentioned *supra*, deals with the issue of whether plaintiff's termination, without a hearing, violated plaintiff's due process rights. Also, defendant cross-moved for summary judgment, and dismissal of the amended complaint, upon the

ground it fails to state a cause of action. The IAS court denied plaintiff's motion, and granted defendant's cross motion for summary judgment dismissing the complaint.

We agree.

In support of his motion, the plaintiff relies heavily upon the administrative determination awarding him unemployment benefits, since he contends that determination allegedly collaterally estops defendant from contesting in the instant action the issue of whether the plaintiff had validly waived his right to a hearing before termination, pursuant to PAI 20-1.11.

Collateral estoppel is a doctrine "based on the notion that it is not fair to permit a party to relitigate an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point" *(Gilberg v Barbieri,* 53 NY2d 285, 291 [1981]; *see, Mutual Fire, Mar. & Inland Ins. Co. v James & Co.,* 92 AD2d 203 [1st Dept 1983], *affd* 61 NY2d 680 [1984]). In other words, in order to invoke the doctrine of collateral estoppel "[t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and * * * there must have been a full and fair opportunity to contest the decision now said to be controlling" *(Schwartz v Public Adm'r of County of Bronx,* 24 NY2d 65, 71 [1969]; *see, Gramatan Home Investors Corp. v Lopez,* 46 NY2d 481 [1979]).

Since the doctrine of collateral estoppel is applicable to the quasi-judicial determinations of administrative agencies, such as the Unemployment Insurance Appeal Board, such determinations are binding, for issue preclusion purposes, in a subsequent legal action *(Ryan v New York Tel. Co.,* 62 NY2d 494, 499 [1984]). However, before collateral estoppel may be applied to an administrative determination, a careful examination of the administrative proceeding must be made by the court to make certain "whether the issue on which estoppel is sought was necessarily decided in the prior agency decision * * * Since administrative agencies are normally charged with making determinations based on unique, and often times complex, statutes and regulations which apply specifically to them" *(Matter of Engel v Calgon Corp.,* 114 AD2d 108, 110 [1986]; *see, Matter of Ranni [Ross],* 58 NY2d 715 [1982]).

As mentioned *supra,* the Appeal Board ruled that the plaintiff's termination was not voluntary, as a result of the fact he had been forced to resign under pressure, and, therefore, he

was entitled to unemployment benefits, but that is not the issue herein. Our examination of the hearing transcript before the Administrative Law Judge clearly indicates that the agency did not consider the issue of the validity of plaintiff's waiver of his right to a hearing before termination, as the consideration of the waiver issue was unnecessary, to the agency determination. Since we find that there was no "identity of issue which has necessarily been decided in the prior action and is decisive of the present action" *(Schwartz v Public Adm'r of County of Bronx, supra,* at 71), we hold that collateral estoppel effect cannot be given to the agency. determination for issue preclusion purposes in this action.

Based upon our review of the amended complaint, we find that its sufficiency depends upon whether the signed waiver of plaintiff's right to a hearing before termination is invalid. In evaluating the amended complaint's sufficiency, we have taken into consideration the plaintiff's constitutional arguments.

The subject waiver, as mentioned *supra,* is contained in plaintiff's signed resignation, dated May 1, 1981. In its cross motion for summary judgment to dismiss the amended complaint, the defendant contends that the plaintiff validly waived his right to a hearing.

A unanimous Court of Appeals in *Matter of Abramovich v Board of Educ.* (46 NY2d 450, 455 [1979], *cert denied* 444 US 845 [1979]) held that public policy is not violated, when a tenured public employee, like plaintiff, waives procedural due process protections, such as a disciplinary hearing, as long as the "waiver is freely, knowingly and openly arrived at, without taint of coercion or duress". Furthermore, the court stated in *Matter of Abramovich v Board of Educ. (supra,* at 455) that the subject waiver could serve "as the quid pro quo for countervailing benefits". Since the date when the case of *Matter of Abramovich v Board of Educ. (supra)* was decided, the Court of Appeals has repeatedly reaffirmed the holding in that case *(Whitehead v State of New York, Dept. of Mental Hygiene,* 71 AD2d 653 [1979], *affd* 51 NY2d 781 [1980]; *Matter of American Broadcasting Cos. v Roberts,* 61 NY2d 244, 249-250 [1984]).

Our examination of the record indicates that, after hard but fair negotiations between the plaintiff and representatives of the defendant, the plaintiff "freely, knowingly and openly arrived at" *(Matter of Abramovich v Board of Educ., supra,* at

455) agreements, which he signed, that provided he waived his right to a hearing before termination in exchange for substantial benefits. We find that plaintiff's waiver supplied "the quid pro quo for [the] countervailing benefits [he received]" *(Matter of Abramovich v Board of Educ., supra,* at 455). Those benefits include the cessation of the defendant's efforts, pursuant to PAI 20-1.11, to terminate plaintiff for poor performance of his duties as a permanent professional/managerial employee in the World Trade Department; the assignment of plaintiff to two paid temporary positions in the PA, which extended his employment with defendant an additional 16 months, while he had an opportunity to seek a permanent position; and, the defendant permitted plaintiff, at the time he was occupying a temporary position, "time off * * * for the purpose of seeking and obtaining new employment". Furthermore, we find that the evidence in the record overwhelmingly indicates that plaintiff waived his right to a hearing before termination "without taint of coercion or duress" *(Matter of Abramovich v Board of Educ., supra,* at 455). Obviously, there was a good and valid consideration for plaintiff to sign such waivers.

Based upon plaintiff's allegations, in paragraphs 2 and 3 of the amended complaint, he holds two college degrees, has had extensive business experience, and is a financial and real estate expert, we conclude that plaintiff was not coerced and was aware of the significance of his actions, when he waived his right to a hearing. Moreover, we find that it did not constitute duress or coercion, when the representatives of the defendant told plaintiff that they intended to terminate him, pursuant to PAI 20-1.11, since they simply informed plaintiff of what the defendant had a legal right to do. We, unanimously, stated in *Gerstein v 532 Broad Hollow Rd. Co.* (75 AD2d 292, 297 [1st Dept 1980]), "A threat to do that which one has the right to do does not constitute duress".

In view of our analysis *supra* of the record, which unequivocally indicates that neither the Administrative Law Judge nor the Appeal Board considered the issue of waiver, we reject the dissent's contention that collateral estoppel applies to the instant case. Furthermore, we find that the dissent has not cited any persuasive evidence from the record that indicates that Mr. Faillace's waiver of his right to a hearing, pursuant to PAI 20-1.11, was not the product of careful deliberation on his part.

Therefore, we find that the IAS court properly granted the defendant's cross motion for summary judgment dismissing

the complaint, upon the ground plaintiff had waived his right to a hearing.

Although it is not necessary for our determination herein, we note in passing that, in respect to the second (prima facie tort) and third (breach of contract) causes of action of the amended complaint, which seek money judgments, plaintiff did not comply with the jurisdictional requirement that he file a notice of claim at least 60 days before the commencement of an action against the defendant "for the recovery or payment of money" (McKinney's Uncons Laws of NY § 7107 [L 1950, ch 301, § 7]). We held in *Luciano v Fanberg Realty Co.* (102 AD2d 94, 97-99 [1st Dept 1984]), "The notice of claim requirement * * * is jurisdictional * * * [and] a timely notice of claim [is] a condition precedent to suit". Moreover, we find that plaintiff's contention, to the effect that this notice of claim requirement is not applicable to civil rights actions under 42 USC § 1983, is meritless, since the plaintiff did not even plead section 1983 in the amended complaint *(note, see in this connection, 423 S. Salina St. v City of Syracuse,* 68 NY2d 474, 488-493 [1986]; *Mills v County of Monroe,* 59 NY2d 307 [1983], which cases held that section 1983 does not invalidate notice of claim requirements in New York State).

Furthermore, we note the appropriate vehicle for the plaintiff to assert his claims in the second and third causes of action of the amended complaint is a CPLR article 78 proceeding and not an action at law. As was stated in *Feraca v Town of Esopus* (63 AD2d 771 [1978]) "The wrongfulness of [plaintiff's] termination from public office is thus the key ingredient to any recovery, yet that is a matter which may only be tested judicially in a proceeding, pursuant to CPLR article 78 *(Austin v Board of Higher Educ. of City of N.Y.,* 5 NY2d 430)".

Finally, we disagree with the dissent's contention that plaintiff's papers make out a prima facie case of age discrimination, since, based upon our examination of the record, we find that plaintiff has not presented sufficient evidentiary proof of such discrimination to raise a triable issue of fact. The Court of Appeals in *Zuckerman v City of New York* (49 NY2d 557, 562 [1980]) stated in pertinent part, "We have repeatedly held that one opposing a motion for summary judgment must produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact on which he rests his claim".

Accordingly, the order and judgment (one paper), Supreme

Court, New York County (William P. McCooe, J.), entered May 13, 1986, which denied plaintiff's motion for partial summary judgment on the first cause of action of the amended complaint, and granted defendant's cross motion for summary judgment dismissing the complaint in its entirety, should be affirmed, without costs.

ELLERIN, J. (dissenting in part). Plaintiff brings this action against his former employer, defendant Port Authority of New York and New Jersey, for wrongful discharge, asserting that after almost 15 years of service as a tenured, permanent employee, he was initially forced to relinquish his tenured status, and, thereafter, was coerced into resigning. Despite a finding by the State Unemployment Insurance Administrative Law Judge that plaintiff's resignation was not voluntary but was "under pressure from the employer", a finding which was made after a hearing at which the defendant employer actively participated and which was affirmed upon administrative appeal, Special Term granted summary judgment dismissing the complaint in its entirety on the ground that plaintiff had freely waived his rights. In my view, such summary disposition was inappropriate under the facts here present with respect to the first and fourth causes of action and, accordingly, I would reverse and deny the defendant's motion for summary judgment as to those two causes of action and, in addition, would grant summary judgment to the plaintiff on the first cause of action.

Plaintiff Ralph A. Faillace, with an educational background that included a Bachelor's degree in Business Administration in Real Estate and a Master's degree in Business Administration in Finance, entered the defendant Port Authority's employ in December 1967 in a middle management position in its Real Estate Department after having had 17 years of experience in private industry. In 1974, the Port Authority's Real Estate Department was abolished and plaintiff was "excessed" and assigned to the Management Services Department as a senior property representative. Thereafter, in 1979, as part of a further personnel reorganization, plaintiff's position was abolished and he was assigned to the World Trade Department.

Throughout this period of service, plaintiff enjoyed the status of a tenured, "permanent employee" by virtue of the defendant's long-standing policy as set forth in its "General Resolution 76", adopted in 1941. Pursuant to that policy, one

who is continuously employed by the Port Authority for a period of more than one year obtains tenure, and as a "permanent employee" cannot be dismissed except for good cause. Port Authority regulation PAI 20-1.11, delineates the procedure for removal of professional and managerial employees for "cause", including the right to notice and a hearing.

After plaintiff's assignment to the World Trade Department in 1979, his supervisors indicated that they were unhappy with his performance. While defendant makes much of its claim that plaintiff admitted that his performance was poor, it appears from the record that plaintiff merely acknowledged, in response to questioning, that he had accumulated a backlog of paperwork attributable to his unfamiliarity with this new department, but that he did not admit to "difficulties in performing his work". In any event, plaintiff asserts that plaintiff's supervisors threatened to terminate his employment forthwith, place a bad report in his personnel file and give poor references for future employment unless he agreed to resign his permanent employment position, for which he had obtained tenure. It was in the face of this threat that plaintiff, on October 10, 1980, signed the resignation offered him. Under this resignation document, plaintiff forfeited his tenure as a "permanent employee" and waived all rights he would be due pursuant to PAI 20-1.11. In exchange, he was given a *"temporary"* employment position, without rights of tenure, in the Regional Development Division of the Planning and Development Department for a period of six months commencing October 27, 1980, at the end of which period he was to resign if not otherwise permanently placed. Included in this agreement were vague promises of assistance in securing a new permanent position in another division of the Port Authority, assistance which does not appear to have been rendered.

On May 1, 1981, Mr. Faillace, again under threats of immediate termination, was forced to sign a similar resignation agreement, this time setting a resignation date of February 19, 1982, continuing a waiver of his rights, and assigning him a temporary employment position in defendant's Tunnels, Bridges and Terminals Department. This agreement purported to give plaintiff time off to pursue and secure other employment, but in fact, he was given no time off, and, again, was denied the promised assistance in obtaining another position within the Port Authority.

Prior to the effective date specified for his resignation, plaintiff came to the belief that the agreements were illegal

and the result of fraud and duress, and he attempted to rescind his resignation by letter dated January 20, 1982. In that letter, plaintiff advised the Port Authority that an appropriate permanent position within the Tunnels, Bridges and Terminals Division was available in the area of work he was already performing satisfactorily.

The Port Authority rejected this "rescission" and the resignation was put into effect on February 19, 1982.

Thereafter, when plaintiff applied for unemployment insurance, the defendant Port Authority objected on the ground that plaintiff voluntarily left his employment without good cause. A hearing was conducted on this issue before Unemployment Insurance Administrative Law Judge Albert Einstein on June 25, 1982. At that hearing William Peterman, principal insurance analyst for the Port Authority Personnel Department, and Richard Peduto, assistant manager of management personnel, appeared on behalf of the Port Authority, and testified at length with the opportunity to fully address all relevant issues regarding the plaintiff's termination from the defendant agency.

After considering the evidence adduced at this hearing, the Administrative Law Judge denied the Port Authority's objections and sustained Faillace's eligibility for unemployment insurance benefits based upon the following opinion: "The credible evidence adduced at the hearing established that claimant was terminated when he resigned February 19, 1982 under pressure from the employer. As early as January 20, and January 21, claimant sought to withdraw his resignation but this was not accepted by the employer. Claimant's various transfers effected by the employer put him in a position where he wound up not being able to perform duties to the employer's satisfaction and the employer therefore requesting a resignation. I find that the termination under these circumstances was non-disqualifying and claimant was entitled to unemployment insurance benefits." This decision, which was appealed by the defendant Port Authority, was affirmed by the Appeal Board on November 4, 1982.

· The instant action was commenced on or about February 18, 1982, almost contemporaneous with the February 19, 1982 termination date. In October 1983, leave was granted to serve the amended complaint here in issue which pleads four causes of action. The first cause of action alleges a violation of plaintiff's due process rights by virtue of defendant's failure to

provide him a hearing pursuant to the defendant agency's own rules; the second cause of action alleges a prima facie tort; the third pleads a breach of contract; and the fourth cause charges age discrimination in violation of Executive Law § 296.

Thereafter, plaintiff moved for summary judgment on the first cause of action in the amended complaint, asserting that under the rules of collateral estoppel the finding in the administrative proceeding that "he resigned * * * under pressure from the employer" conclusively established that his "resignation", with its "waiver of rights", was not voluntary and was, therefore, invalid, with the consequence that he remained a tenured employee and, as such, was entitled to the notice and hearing procedures mandated by defendant's rules in the case of such an employee, which concededly were not met here.

Defendant cross-moved for summary judgment dismissing the complaint for failure to state a cause of action, and alternatively, to dismiss the second through fourth causes of action on the procedural grounds of failure to file a notice of claim.

Special Term focused on the issue of the validity of the initial document, dated October 10, 1980, which provided for plaintiff's resignation and a waiver of his rights and the court consistently characterized that agreement solely as "the waiver" and couched the issue as "validity of the waiver". Notwithstanding the contradictory factual allegations in plaintiff's papers, Special Term made a conclusive finding that the waiver was freely entered into and valid, and granted defendant's cross motion dismissing the complaint. In so doing, Special Term summarily dismissed the administrative finding "that plaintiff's termination was not voluntary and that he was entitled to benefits" as "not the issue before this Court". The court took the position that the ruling that the resignation was involuntary was of no relevance on the issue of whether plaintiff's waiver of rights was involuntary.

Special Term appears to have isolated the "waiver provision" and treated it as a completely separate and discrete agreement unrelated to the mandatory resignation provision in the very same document. That document itself, however, makes clear that the waiver of rights was part and parcel of the very resignation agreement that plaintiff was found to have been pressured into signing. It is difficult to perceive how

the two provisions in a single document, signed as a single entity, can be treated differently in terms of the state of mind of the party who allegedly entered into the agreement and signed that document. Either plaintiff entered into the entire arrangement freely and voluntarily or the entire agreement was involuntarily induced. It cannot be viewed piecemeal.

Here, the Administrative Law Judge, while specifically concerned with the issue of plaintiff's termination, found that plaintiff's acquiescence in the agreement which provided for his resignation was not voluntary. That determination as to involuntariness necessarily extends to the remaining provisions of the agreement which were inexorably intertwined with the termination provision.

It is now clear that the doctrines of res judicata and collateral estoppel are applicable to give conclusive effect to the quasi-judicial determinations of administrative agencies. *(Ryan v New York Tel. Co.,* 62 NY2d 494.) Under collateral estoppel a party is precluded from litigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding, and material thereto, and decided against that party, whether or not the tribunal or causes of action are the same *(e.g., Ripley v Storer,* 309 NY 506). In the application of collateral estoppel with respect to administrative determinations, the burden rests on the proponent to demonstrate the identicality and decisiveness of the issue, while the burden rests upon the opponent to establish the absence of a full and fair opportunity to litigate the issue in the prior action or proceeding. *(Ryan v New York Tel. Co., supra,* at 501.)

In this case, it was clearly established that the issue decided at the administrative proceeding was directly material and controlling upon the issue sought to be precluded here. (The defendant does not raise any issue with respect to its full and fair opportunity to litigate the matter at the administrative proceeding.) The precise issue before the unemployment insurance proceeding was whether the termination of plaintiff's employment, as expressed through the resignation he signed, was voluntary. The administrative hearing fully explored the circumstances leading up to plaintiff's resignation and a finding was made that plaintiff was involuntarily pressured into resigning. The terms and conditions of that resignation, which plaintiff was found to have signed involuntarily, were held invalid.

That is the same material issue which is raised here. As the

defendant repeatedly asserts, a tenured public employee may waive significant rights appurtenant to that tenure, *so long as the waiver is freely, knowingly, and openly arrived at, without taint of coercion or duress. (Matter of Abramovich v Board of Educ.,* 46 NY2d 450, *cert denied* 444 US 845; *see also, Matter of American Broadcasting Cos. v Roberts,* 61 NY2d 244; *Matter of Feinerman v Board of Coop. Educ. Servs.,* 48 NY2d 491.) Accordingly, the crucial issue in the matter before us, as in the hearing before the Administrative Law Judge, is whether the plaintiff was under taint of coercion or duress when he signed the resignation agreement which included the waiver of his rights under PAI 20-1.11.

In order to obtain his reassignment to the Regional Development Division of the Planning and Development Department, plaintiff was compelled by the defendant to tender his resignation and waive his rights. He was threatened by Port Authority management personnel that unless he signed the waiver his employment would be terminated forthwith and he would receive a bad report in his personnel record and poor references for future employment. As Mr. Faillace graphically testified at the hearing, "I was told at that time by [Senior Personnel Representative] Curcuruto 'you have no choice; it is either sign it or they will commence termination proceedings'."

Clearly, under circumstances such as these, plaintiff did not sign the resignation and waiver of rights under his own free will. Contrary to the defendant's contention, its threats to terminate plaintiff did not merely advise him of acts it was legally entitled to do. Had plaintiff remained under tenure, he could not have been terminated at will. Nor is it persuasive that plaintiff received a benefit, in the form of one additional year of temporary employment. The earned right of tenure and continued employment is too significant a benefit to be traded away for a brief period of temporary work and an empty promise of assistance in securing a permanent position. Clearly, it must be said that under such circumstances petitioner signed the waiver under taint of duress and coercion. As was stated in *Gerstein v 532 Broad Hollow Rd. Co.* (75 AD2d 292, 297), "[d]uress * * * may be said to exist where one is compelled to perform an act which he has the legal right to abstain from performing. The compulsion must be such as to overcome the exercise of free will * * * It must 'involve an act or a threat of action from which the person sought to be influenced is entitled to be free' ".

Since plaintiff did not validly waive his right to tenure, he retained a constitutionally protected property interest in his continued public employment. Plaintiff's property interest in his employment with the Port Authority was created and defined by the terms of his employment. *(Board of Regents v Roth,* 408 US 564, 577-578.) The rules and understandings, such as the General Resoultion of 1941, establishing tenure and permanence, and PAI 20-1.11 setting forth the procedure for a hearing prior to dismissal for cause, secure for plaintiff the legal entitlement to such benefits *(supra).* The Supreme Court has recently reaffirmed the significance of the constitutional property interest in employment for nonprobationary public employees who by statute or rule could be fired only for cause. *(Cleveland Bd. of Educ. v Loudermill,* 470 US 532.) The Supreme Court explicitly stated that the Due Process Clause provides that the substantive rights of life, liberty and property cannot be deprived except pursuant to constitutionally adequate procedures. Once a property interest in public employment is conferred, as it is here by the Port Authority tenure rules, it may not be deprived without appropriate procedural safeguards *(supra,* at 541).

Plaintiff, not having waived his rights as a tenured employee, could not be dismissed without being accorded the hearing he was entitled to under the defendant's own rules. Accordingly, plaintiff is entitled to summary judgment on his first cause of action, alleging a deprivation of due process, and the grant of summary judgment to the defendant on that cause of action should be reversed.

I agree that the second and third causes of action must be dismissed for the failure of the plaintiff to serve a notice of claim pursuant to the holding in *Mills v County of Monroe* (59 NY2d 307).

However, plaintiff's fourth cause of action, asserting age discrimination should not have been summarily dismissed. Plaintiff's papers made out a prima facie case. He demonstrated that, being over 50 years of age, he was a member of the protected class, that he was discharged, that he was qualified for the position held, and that he was replaced by a younger person. *(See, Mayer v Manton Cork Corp.,* 126 AD2d 526.) For the defendant to succeed on its summary judgment motion, it had the burden of setting forth evidentiary facts to establish its defense as a matter of law *(supra).* Here, the defendant's claim is that plaintiff's performance was unsatisfactory. However, plaintiff has not yet had a hearing on this

issue. Despite the conclusory allegations of the affidavits submitted by defendant, issues of fact as to Faillace's job performance are yet to be determined and summary judgment is, therefore, inappropriate. Similarly, defendant's assertion that plaintiff's replacement, a Mr. Rossi, is a "few years younger" than plaintiff but in the same senior pension system, is an issue of fact which must await trial. Accordingly, dismissal of the fourth cause of action should be reversed and defendant's motion for summary judgment with respect to that cause of action denied.

MURPHY, P. J., ASCH and ROSENBERGER, JJ., concur with ROSS, J.; ELLERIN, J., dissents in part in an opinion.

Order and judgment (one paper), Supreme Court, New York County, entered on or about May 13, 1986, affirmed, without costs and without disbursements.