Patricia **BARON**, et al., Plaintiffs,

v.

**PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Defendant.**

Nos. 96 Civ. 7007(CBM), 96 Civ. 7012(CBM), 96 Civ. 7010(CBM) and 96 Civ. 7011(CBM).

United States District Court, S.D. New York.

Sept. 4, 1997.

---

Steve S. Efron, New York City, for Plaintiff.

Janet E. Charles, Milton H. Pachter, New York City, for Defendants.

### *OPINION*

MOTLEY, District Judge.

Plaintiffs filed separate complaints on September 13, 1996 against the defendants alleging violations of;

(1) 42 U.S.C. § 1983 ("1983") for employment discrimination based on age and sex and for the deprivation of contract, property and due process rights,

(2) Title VII and the Age Discrimination in Employment Act ("ADEA"),

(3) New York Human Rights Law ("HRL") and New Jersey Law Against Discrimination ("LAD") prohibiting employment discrimination based on age,

(4) common law breach of contract.

The court consolidated the cases by order dated December 12, 1996. On February 17, 1997, defendants' filed a motion for partial summary judgment as a matter of law as to all claims asserted against the Commissioners, as to the § 1983 claim of deprivation of contract, property and due process rights asserted against all defendants, and as to the Title VII and ADEA claims asserted against the supervisors and PA.[1] The court heard arguments on defendants' motion on April 25, 1997. By memorandum opinion dated June 29, 1997, this court granted defendants' partial summary judgment motion as to the Title VII and ADEA claims due to plaintiffs' failure to timely file an EEOC charge and as to the HRL and LAD claims due to the New York and New Jersey antidiscrimination agencies lack of jurisdiction over defendant PA. *Baron, et al., v. Port Authority et al.,* 968 F.Supp. 924 (S.D.N.Y.1997). This court now addresses defendants' motion in regards to the § 1983 claim asserted against all defendants for violating contract, property and due process rights and in regards to the claims asserted against the Commissioners.[2] The court assumes familiarity with the earlier proceedings of this case and notes only those facts pertinent to the disposition of the matter now before the court.

## FACTS

Plaintiffs are New York Citizens who were terminated from their respective positions by the defendants on September 15, 1995. Plaintiff Baron is a 54 years old woman who began working for defendant Port Authority in 1966 and was eventually promoted to the position of Managing Director of the Port Authority Gateway American Committee in the Government and Community Affairs Department of Port Authority ("GCAD"). Plaintiff Diaz is a 45 year old Hispanic woman who began working for defendant Port Authority in 1987 as the New York Legislative Representative, a managerial position in GCAD. Plaintiff Toole began working for defendant Port Authority in 1984 and was eventually promoted to the position of Client Manager in GCAD. Plaintiff Ilan is a 51 year old man who began working for defendant Port Authority in 1970 and was eventually promoted to the position of Manager of the Division of Economic Trends in the Port Authority's Office of Economic and Policy Analysis.

Defendant Port Authority ("PA") is a bistate public agency created by Compact in 1921 between New York and New Jersey with its principal place of business in New York. Defendant Port Authority's essential governmental functions are to develop, coordinate and operate terminal, transportation and other facilities of commerce in and through New York. PA consists of a board of twelve Commissioners who are defendant Kathleen A. Donovan, Chairperson; defendant Charles Gargano, Vice–Chairperson; and defendants Lewis M. Eisenberg, James G. Hellmuth, Henry F. Henderson, Jr., Robert C. Janiszewski, Peter Kalikow, George D. O'Neill, Alan Philibosian, Melvin L. Schwetzer, Bincent Tese, and Frank J. Wilson, members of the Board. (hereinafter, "Commissioners"). The other defendants hold various positions at the PA and are as follows; George J. Marline, Executive Director; Paul Blanco, Chief Administrative Officer; Richard Codd, Director of GCAD; and Louis J. LaCapra, Director of Human Resources.

Plaintiffs allege that when they interviewed with, were hired by, and worked for

---

**1.** Defendants also argued that plaintiffs' common law breach of contract claims should be precluded for failure to exhaust administrative remedies, namely an Article 78 proceeding and that plaintiffs' New York and New Jersey statutory claims were inapplicable since Port Authority was a bistate agency that was not subject to the independent laws of either state but was regulated by laws jointly approved by both.

**2.** The court reserves decision on defendants' motion for summary judgment with regards to the common law breach of contract claim until after a decision on the merits of plaintiffs' federal claims has been rendered.

PA, they were continuously informed and reassured that PA maintained a policy of staff retention. The policy allegedly gave employees specific rights in the event of a reduction in labor force, including seniority rights, transfer, reassignment and the right to be recalled to work if a position opened that the employee was qualified to work. Plaintiffs allege that they were told that the policy was created to foster a "long standing practice of attempting to provide job security" and to "hire and develop professional and managerial staff with the purpose of creating and maintaining a stable career workforce."

Plaintiffs allege that on September 7, 1995, the Commissioners met and adopted a resolution authorizing department directors to fire managerial employees in the exercise of "sound business and policy discretion of management." The resolution is alleged to be contrary to previous board resolutions and PA policies. Plaintiffs allege that as a result of the resolution, defendants Marlin, Blanco, Codd and LaCapra immediately implemented a massive reduction in force, with defendant Codd terminating several employees, including plaintiffs, on September 15, 1995. Plaintiffs assert that Codd's decision on which employees to fire was based on political favoritism, age, sex and national origin and that he targeted for termination female management-level employees and management level employees over the age of 40 while sparing the jobs of younger, male, or Republican management level employees. Plaintiffs allege that positions for which they would have been qualified have been filled by individuals with less seniority.

## DISCUSSION

### I. Standard for Summary Judgment

The court may grant summary judgment if, after viewing the evidence in the light most favorable to the non-movant, the court determines that "there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992); *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 2076–77, 119 L.Ed.2d 265 (1992) ("all justifiable inferences are to be drawn in the [non-movant's] favor") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986)).

### A. Section 1983

### 1. Due Process Rights

Section 1983 prohibits any person, acting under color of state law or statute, from depriving another person of rights, privileges, or immunities protected and secured by the constitution and laws. 42 U.S.C. § 1983. The Supreme Court has held that before a person is deprived of a protected interest, he must be afforded an opportunity for some kind of hearing. *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971), and that "due process requires that when a State seeks to terminate a [protected] interest . . ., it must afford notice and opportunity for a hearing appropriate to the nature of the case before the termination becomes effective." *Bell v. Burson*, 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971).

Due process protection of property does not create a property interest but serves as a safeguard to property interests that a person has already acquired elsewhere. *See, Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) ("property interests . . . are not created by the Constitution . . . Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law"). Thus, an "at will government employee . . . generally has no claim based on the Constitution at all." *Waters v. Churchill*, 511 U.S. 661, 679, 114 S.Ct. 1878, 1890, 128 L.Ed.2d 686, 702 (1994); *see also, White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1062 (2d Cir.1993) ("An interest that state law permits to be terminated at the whim of another person is not a property right that is protected by the Due Process Clause"); *Luck v. Mazzone*, 52 F.3d 475 (2d Cir.1995) (plaintiff lacked formal employment guarantee that would have given her a cognizable property interest in her job nor cited any

other basis for inferring that New York law gave her such an interest).

■ In this case, defendants argue that plaintiffs were at-will employees and did not have property interests in their employment, thereby, making the procedural protections of the Due Process Clause inapplicable. Defendants point to PA's February 13, 1969 Board Resolution ("1969 Resolution") which amended the September 25, 1941 Resolution ("1941 Resolution"), with respect to unclassified, professional and managerial employees. The 1969 Resolution stated that such employees could be fired "for any cause or reason" and "without the need of a formal hearing." The 1969 Resolution replaced the provision of the 1941 Resolution, which stated that *all permanent employees* could be fired "for good cause [and] after a hearing," and put in its place the provision that *only permanent classified employees* were insulated from being fired without a hearing or for good cause. Both the 1941 and the 1969 Resolution lists, "the reorganization of the Port Authority, or of one of its facilities, properties, department or divisions," as an example of good cause.

Both Resolutions define a *"permanent employee"* as **"any** employee" (other than Executive Director and General Counsel) who has been continuously employed by [PA] for more than twelve months. The 1969 Resolution defines; (1) *"unclassified employee"* as "an employee holding the positions of Deputy Executive Director, Secretary, Department Director, and top management positions;" (2) *"professional and managerial employees"* as

"**all** employees occupying positions to be specifically designated on a list to be promulgated by the Executive Director ... which shall, in general, include employees occupying positions which require a high degree of formal education or specialized training, those holding supervisory or managerial positions or positions of a confidential nature" and; (3) *"classified employee"* as employees holding none of the above positions.

In 1995, defendants argue that PA determined that it was necessary to reduce its work force to promote efficiency and economy within the agency. In August, 1995, pursuant to a retirement incentive program and in September, 1995, January, 1996, and December, 1996, via Resolutions, PA eliminated 1265 positions, including plaintiffs.' Defendants maintain that PA actions were in line with the 1969 Resolution and company policies and did not violate any employee rights.

Although the court is not now deciding on whether plaintiffs were at-will employees, the court notes that it would appear from the Resolutions that plaintiffs would be categorized as permanent professional and managerial employees [3] who were at will employees that could be fired for 'any cause/reason' and, therefore, were not entitled to the procedural protections of the Due Process Clause.[4] The court finds that even if it were to decide that plaintiffs were "classified employees" or employees with a protectable property interest,

---

3. Plaintiff Baron was a Managing Director; Diaz was a Legislative Representative which is a managerial position; Toole was a Client Manager, and Ilan was a Manager in the Economic Department.

4. The court is reserving decision on this issue because the court has not considered the weight of manuals and other policy statements plaintiffs' argue created a contract of employment and implied right to a hearing prior to termination. In support of their motion to dismiss plaintiffs' common law breach of contract claim, defendants cite, *Faillace v. Port Authority of New York and New Jersey*, 130 A.D.2d 34, 517 N.Y.S.2d 941 (1st Dep't), *appeal denied*, 70 N.Y.2d 613, 524 N.Y.S.2d 432, 519 N.E.2d 343 (1987), which is a case strikingly similar to the present case to show that plaintiffs have no protectable contract rights under the Constitution. In *Faillace*, the court rejected plaintiffs assertion of a contract right in employment with PA based on PA policies and held that "professional/managerial em-

ployees, [like plaintiff], could be terminated for any cause or reason ... we find that [1941 Resolution] is a legislative act that does not confer any rights on Professional/Managerial employees, which are protected by the Contract Clause of the Constitution." *Id.* (citing *Dodge v. Board of Education of the City of Chicago. et al.*, 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57 (1937)) (civil service statute does not necessarily create contract rights under the Contract Clause). However in contrast to *Faillace*, plaintiffs cite, *Kadushin v. Port Authority*, 603 F.Supp. 1146 (E.D.N.Y.1985), where the court held that the 1941 Resolution vested plaintiff, a permanent employee, with a substantive property interest and that the firing of plaintiff, pursuant to the 1969 Resolution, without due process, constituted a violation of plaintiffs substantive due process rights. As discussed above, the court need not address this issue to decide defendants' motion as to the § 1983 claim.

the Supreme Court in *Waters* established that the only protection provided by the Constitution is a right to adequate procedure. [511 U.S. at 679, 114 S.Ct. at 1890], 128 L.Ed.2d at 702. The Second Circuit has determined further that in cases brought by discharged employees, bona fide state reduction programs which terminate a large number of employees do not give rise to procedural violations. *see, Dwyer v. Regan,* 793 F.2d 457 (2d Cir.1986) (If state decides to make its operations more efficient by abolishing positions or implementing a substantial reduction in its work force, we are not convinced state must routinely provide hearings for each employee whose position is targeted for elimination).

Plaintiffs, in this case, argue that the September 15, 1995 Resolution ("1995 Resolution"), which authorized and led to the subsequent reduction in PA's work force, was not a bona fide program because the 1995 resolution had not been adopted by the Governor of New York in accordance with N.Y. Unconsol. Law §§ 7151 and 7152.[5] Without this adoption, plaintiffs assert that the Resolution was not effective when they received their notices of terminations. Defendants contend that the 1995 Resolution was sent to the Governor but that the Governor failed to respond within 10 days, thereby making the Resolution effective by default pursuant to New York law. Plaintiffs do not contend that the 1995 Resolution was vetoed by the Governor within (or beyond) the 10 day review period.

The Compact creating PA provides that "each state reserves the right to provide by law for the exercise of a veto power by the governor thereof over any action of any commissioner appointed therefrom." N.Y.Unconsol.Laws § 6417 (McKinney's 1979 and Supp.1997) ("Unconsol.Laws"). Accordingly, New York has enacted law which states "no

action taken at any meeting of the port of New York authority by any commissioner appointed from the state of New York shall have force or effect until the governor of the state of New York shall have an opportunity to approve or veto the same under the provisions of [the Compact]."[6] *Id.* at § 7151.

New York requires PA to "transmit to the governor at the executive chamber in Albany a certified copy of the minutes of every meeting of the [PA] as soon after the holding of such meeting as such minutes can be written out." *Id.* at § 7152. The governor then has ten days from the date of transmission, excluding weekends and holidays, to return the minutes with "his approval or with his veto of any action therein recited *as having been taken* by any commissioner." *Id.* (emphasis added). If the governor does not return the minutes within the 10 day period, "any action therein recited will have full force and effect according to the wording thereof" *Id.*, however, if the governor returns the minutes and exercises his veto within the 10 day period, the commissioners' actions "shall be null and void." *Id.* at 7153.

Essentially, in this case, plaintiffs were notified on September 15, 1995 that in accordance with a newly implemented agency wide reduction policy, they were being terminated but would continue on as paid employees for 30 days, receiving full days off during this time to explore other employment. (*see,* Baron, Diaz, Ilan, and Toole Complaints ¶¶ 30, 29, 30, 31, respectively). Although plaintiffs were notified of their termination prior to the governor's approval of the minutes, their actual terminations and separation as PA employees did not occur until after the reduction policy (1995 Resolution) became effective by default. The laws do not provide that the Commissioners cannot act or adopt measures at meetings in furtherance of particular ac-

---

**5.** Plaintiffs allege that the minutes of the September 7, 1995 meeting of the Board of Commissioners, which included the 1995 Resolution, were transmitted to the Governor of New York's office on September 11, 1995. (Effron Aff., Exh. 2). Plaintiffs contend that the Governor had until September 25, 1997, 10 days from the transmission date (excluding weekends and holidays) to approve or veto the minutes. Therefore, plaintiffs assert that the 1995 Resolution had no force or effect during the review period and that since

the review period was from September 11 to September 25 and plaintiffs received their notices of termination on September 15, plaintiffs terminations without notice and a hearing deprived them of their procedural due process rights in violation of § 1983.

**6.** New Jersey has enacted similar legislation. *see,* N.J.S.A. § 32:2–6.

tions prior to the expiration of the 10 day review period but they do make clear, however, that any actions implemented or taken by the Commissioners prior to governor approval are subject to veto and nullification.

Since the governor did not veto the minutes or the 1995 Resolution specifying PA's aim and intention of reducing its work force within the 10 day period, the 1995 Resolution identifying the Commissioners' undertaking of an agency wide reduction policy became effective. Hence, the court finds that the 1995 Resolution and its implementation were a bona fide program. Since there was no gubernatorial veto of Commissioners' actions, neither plaintiffs' notices of termination nor forthcoming terminations were null or voided. Hence, the court finds that the 1995 Resolution and its implementation were a bona fide program and that plaintiffs' terminations without a hearing and pursuant to a bona fide and substantial reduction in force program did not give rise to procedural violations. *see, Dwyer,* 793 F.2d 457. This court therefore grants defendants partial summary judgment motion with respect to the § 1983 procedural due process claims.

## 2. Respondeat Superior and Qualified Immunity

Defendants contend that the § 1983 claims brought against defendant Commissioners in their official capacities should be dismissed due to the inapplicability of the respondeat superior doctrine in § 1983 actions. Defendants also maintain that all of plaintiffs' claims asserted against defendant Commissioners in their personal capacities should be dismissed due to the qualified immunity doctrine. The Supreme Court has encouraged the use of summary judgment in cases involving qualified immunity to dismiss insubstantial suits against government officials. Qualified immunity affords protection to government officials sued in their individual capacity, *P.C. v. McLaughlin,* 913 F.2d 1033, 1039 (1990). The Supreme Court has declined to draw a distinction for purposes of immunity law in § 1983 actions brought against state officials and those brought against federal officials. *Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978).

When government officials abuse their powers, the Supreme Court has determined that actions for damages may be the only appropriate and effective way to vindicate constitutional rights. *Harlow v. Fitzgerald,* 457 U.S. 800, 814, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982). However, the Court noted that damages actions may be costly and may prevent officials from performing their duties for fear of harassing litigation. *Id.* The Supreme Court has established a balance between these conflicting objectives by generally providing government officials "performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) ("all but the plainly incompetent or those who knowingly violate the law" are protected by qualified immunity).

In determining whether an official should have known whether his or her conduct was violating protected rights, courts apply an "objective legal reasonableness" standard which assess the official's action in light of the legal rules that were "clearly established" at the time the action was undertaken. *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2739; *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987) ("even when plaintiff's federal rights are clearly defined, qualified immunity may still be available if it was 'objectively reasonable' for [public official] to believe that his acts did not violate those rights") (citing *Malley,* 475 U.S. at 341, 106 S.Ct. at 1096). For a right to be "clearly established," it cannot be abstract and broad, like perhaps the Due Process Clause, but must be particularized and "sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] that right . . . . the unlawfulness must be apparent." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039; *Eng v. Coughlin,* 858 F.2d 889, 895 (2d Cir.1988).

In this case, defendants first argue that plaintiffs had no rights to continued employment and maintain that even if it is determined that plaintiffs have such rights, Commissioners only action was to adopt a resolution which authorized department directors to eliminate positions in an effort to promote economic efficiency. Defendants maintain that Commissioners' conduct was objectively reasonable in that they had reason to believe that their actions were not violating any employee contract or property rights since neither PA policies nor resolutions vested such rights in plaintiffs, as was determined by the Appellate Division [7]

Given the different rulings in *Faillace, Kadushin,* and *Williams,* it seems that the law in this area has not been 'clearly established.' Since the law with respect to rights vested in PA employees is not clearly defined and established, it is objectively reasonable to conclude that it was not the Commissioners' understanding that plaintiffs were vested with any contractual, property, or procedural rights with regards to their employment or that the Commissioners knowingly violated said rights, if any. Therefore, the court finds that the doctrine of qualified immunity applies to the Commissioners and that the Commissioners are exempted from personal liability with respect to the breach of contract claim asserted against the Commissioners in their personal capacities.[8] The court therefore grants defendants partial summary judgment motion.

### 3. Respondeat Superior

Defendants argue that plaintiffs claims pursuant to § 1983 [9] should be dismissed against the Commissioner due to their lack of personal involvement in the decision to terminate the particular plaintiffs. Where damages are sought in a § 1983, the defendant being sued in his official capacity must be responsible for the alleged constitutional deprivation. *Johnson v. Glick,* 481 F.2d 1028, 1034 (2d Cir.1973), *cert.denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985) (per curiam) (plaintiff must demonstrate personal involvement) *Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1066 (1989) (personal involvement necessary but not direct participation).

The general rule of this Circuit is that the doctrine of respondeat superior is inapplicable to actions brought under § 1983 because a showing of personal responsibility of the defendant is required. *See, Johnson,* 481 F.2d at 1034; *see also, Turpin v. Mailet,* 579 F.2d 152, 167 (2d Cir.1978) (in banc) ("notions of respondeat superior have not been incorporated into § 1983 to permit the imposition of liability in damages upon supervisory personnel for the wrongs of their subordinates"), *cert. denied,* 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662 (1978). To determine personal responsibility, the court must evaluate the actual conduct of the defendant to assess whether defendant authorized the alleged unlawful conduct.

Defendants, in this case, maintain that the Commissioners only action was the adoption of the 1995 Resolution authorizing department heads to terminate various positions. Defendants argue that since the Commission-

---

7. By letter, plaintiffs contend that Commissioners should have known that by adopting the 1995 Resolution authorizing the terminations, they were depriving plaintiffs of rights previously conferred under the prior 1941 resolution and acknowledged by the court in *Kadushin.* The *Kadushin* court notes but does not consider a Second Circuit unpublished decision which held that "[s]ince the [PA]'s internal regulations permitted managerial employees like appellant to be dismissed for any reason, appellant cannot claim any protectable right in an expectation of job retention." *Williams v. Port Authority,* 584 F.2d 974 (2d Cir.1978). The court noted that it was not considering *Williams* because that case did not address the significance of the 1941 Resolution.

8. If the court had not decided defendants' summary judgment motion with respect to the § 1983 deprivation of due process claim in defendants' favor as has already been discussed, the court notes that the Commissioners would be protected by qualified immunity against the § 1983 deprivation claim as well for the same reasons noted above.

9. Since the Equal Protection Clause of the Fourteenth Amendment protects against deprivation based on sex and gender, plaintiffs may still have a claim under § 1983.

ers were not involved in the decision to terminate any particular position or employee, their actions did not rise to the level of personal responsibility required by § 1983. Defendants point to the *Al–Jundi* case where the Second Circuit found that defendant Governor (who played a role in formulating and implementing a plan to retake Attica following prison riots but did not play a role in or authorize the brutalities alleged) was not sufficiently involved in or related to the alleged unlawful conduct to render him personally responsible for the alleged § 1983 violations. The court noted that the defendant's actions were limited to his ratification of the decision to abandon negotiations and to his ordering of the state police to formulate a plan to regain control of the prison, actions that were not unlawful or alleged to be unlawful.

Since the court has already determined that plaintiffs were not entitled to a hearing prior to their termination pursuant to the Due Process Clause, the court now makes a determination only as to whether the Commissioners' actions were sufficiently related to the alleged deprivation of plaintiffs' rights based on age and sex. In viewing the facts in plaintiffs' favor, the court finds that defendant Commissioners were not involved in the decision on the termination of particular employees; therefore, they were not sufficiently involved in the alleged wrongful conduct of discrimination based on age and sex to render them liable. In their complaint, plaintiffs, themselves allege that it was their supervisors and department heads that targeted and fired them based on their gender, age, and sex, not the Commissioners. The court therefore grants defendants' partial summary judgment on the § 1983 claims asserted against the Commissioners in their official capacity due to the inapplicability of the respondeat superior doctrine and the lack of personal involvement in the firing of plaintiffs.

## CONCLUSION

For the reasons set forth herein, the court grants defendants' partial summary judgment motion as a matter of law with respect to the § 1983 deprivation of due process claims, the claims asserted against defendant Commissioners in their personal capacities, and the § 1983 claims asserted against defendant Commissioners in their official capacities.

SO ORDERED