Akiva **TESSLER**, Plaintiff,

v.

David A. **PATERSON**, as Governor of the State of New York, Dennis Rosen, as Chairman of the Division of Alcoholic Beverage Control, f/k/a New York State Liquor Authority, in his individual and official capacities, Noreen Healy, as a Commissioner of the Division of Alcoholic Beverage Control, in her individual and official capacities, Jeanique Green, as a Commissioner of the Division of Alcoholic Beverage Control, in her individual and official capacities, the State of New York, and the Division of Alcoholic Beverage Control, Defendants.

No. 10 Civ. 9313.

United States District Court,
S.D. New York.

March 7, 2011.

Akiva Tessler, Staten Island, NY, for Plaintiff.

Joel Graber, Joshua Benjamin Pepper, New York State Office of the Attorney General, New York, NY, for Defendants.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

On December 14, 2010, plaintiff Akiva Tessler, a former administrative law judge ("ALJ") representing himself *pro se,* filed a complaint alleging that the defendants wrongfully terminated his employment when they eliminated all three-full time ALJ positions in the New York State Division of Alcoholic Beverage Control pursuant to a state-wide layoff. Compl. ¶¶ 40, 41. Plaintiff contends his position was terminated because the defendants disagreed with his evidentiary rulings, and that the statewide "workforce reduction" merely provided a pretextual justification for his termination. *See, e.g.,* Compl. ¶¶ 36–39, 45. Plaintiff asserts the following causes of action: (1) violation of procedural due process; (2) violation of substantive due process; (3) First Amendment retaliation; (4) breach of contract; (5) tortious interference with contract; and (6) intentional and/or negligent infliction of emotional distress. *See* Compl. ¶¶ 57–86. Plaintiff names as defendants all of the following: the State of New York; the Division of Alcoholic Beverage and Control, f/k/a New York State Liquor Authority; David A. Paterson, as Governor of the State of New York; Dennis Rosen, as Chairman of the Division of Alcoholic Beverage Control, in his individual and official capacities; Noreen Healy, as Commissioner of the Division of Alcoholic Beverage Control, in her individual and official capacities; and Jea-nique Greene, as Commissioner of the Division of Alcoholic Beverage Control, in her individual and official capacities.

Contemporaneously with filing the complaint, plaintiff sought an *ex parte* Order to Show Cause enjoining the defendants from abolishing his position. The Court declined to grant such relief *ex parte,*[1] but scheduled a hearing for December 21, 2010 to consider plaintiff's request for a preliminary injunction. During the hearing, the Court set a briefing schedule for defendants' contemplated motion to dismiss and heard oral argument on plaintiff's motion for a preliminary injunction. After careful consideration, the Court issued a "bottom-line" order on December 30, 2010 denying plaintiff's motion for a preliminary injunction.[2] On January 11, 2011 the Court issued a Memorandum explaining the reasons for its denial of plaintiff's motion for a preliminary injunction.

On December 29, 2011 defendants filed a motion to dismiss plaintiff's complaint. On January 13, 2011, both parties requested extensions of the briefing schedule, which the Court granted. Plaintiff filed opposition papers on January 28, 2011, defendant filed reply papers on February 14, 2011, and the Court heard oral argument on February 17, 2011. After careful consideration, the Court hereby dismisses plaintiff's entire complaint with prejudice. For the reasons explained below, plaintiff's three federal causes of action fail on the merits as a matter of law. Additionally, the federal claims must be dismissed against the individual defendants in their personal capacities on the independent ground that these claims are barred by the

---

1. On December 17, 2010, plaintiff filed a Notice of Appeal in the Second Circuit challenging the Court's denial of plaintiff's *ex parte* Order to Show Cause; that appeal is currently pending.

2. On January 28, 2011, plaintiff filed yet another Notice of Appeal in the Second Circuit challenging the Court's denial of plaintiff's motion for a preliminary injunction; that appeal is currently pending.

doctrine of qualified immunity. With respect to the state law claims, the Eleventh Amendment bars all three claims against the State of New York, the Division of Alcoholic Beverage Control, and the individual defendants in their official capacities. Qualified immunity bars the state law claims asserted against the individual defendants in their personal capacities. Accordingly, the Court concludes that all claims against all defendants must be dismissed.

The relevant allegations of plaintiff's complaint are as follows. Plaintiff joined the New York State Division of Alcoholic Beverage Control as an Administrative Law Judge (under the Civil Service title of "Hearing Officer") in 1992. Compl. ¶ 14. As part of his official duties, plaintiff conducted disciplinary proceedings commenced by the Division of Alcoholic Beverage Control against its licensees for alleged violations of the Alcoholic Beverage Control Law and/or State Liquor Authority Rules. *Id.* ¶ 16. Plaintiff is in the competitive class of the Civil Service and a member of the Public Employees Federation ("PEF") union. *Id.* ¶ 15. Through his membership in PEF, plaintiff had a contract of employment with the State of New York. *Id.* ¶ 46. Under Article 33 of the 2007–2011 Agreement between the State of New York and PEF (the "Agreement"), plaintiff could only be terminated for just cause upon notice of discipline, a subsequent disciplinary grievance, and an

eventual hearing before the disciplinary arbitrator. *Id.* ¶ 47.[3]

On July 12, 2007, Chief Administrative Law Judge Stephen D. Kalinsky sent an email to the ALJs in the Division of Alcoholic Beverage Control directing them to accept all documents offered into evidence by the State Liquor Authority during hearings even if the Authority failed to lay a proper foundation. *Id.* ¶ 19. Plaintiff believed this direction was improper and in effect refused to follow it by giving such documents no weight.[4] *Id.* ¶¶ 21, 29. Plaintiff included in his written findings and opinions the reasons for his refusal to give any weight to the documents. *Id.* ¶ 29.

In January 2009, the Commissioners of the State Liquor Authority requested plaintiff to "explain why no weight was given to copies of documents". *Id.* ¶ 30. Plaintiff responded by repeating the explanations he had set forth in his written findings of fact and opinions. *Id.* On May 25, 2010, at a meeting with the Counsel's Office staff, defendant Dennis Rosen singled out plaintiff's evidentiary rulings for criticism. *Id.* ¶ 31.

On September 22, 2010, the Commissioners of the Authority directed plaintiff to submit a memo explaining his objections to the policy. *Id.* ¶ 32. On October 4, 2010, plaintiff duly submitted a memo setting forth the reasons for his rulings. *Id.* ¶ 36. At a State Liquor Authority Full Board Meeting held on October 6, 2010,

---

**3.** Article 22.1(a) of the Agreement provides that there shall be no loss of present employment by permanent employees as a result of the State's exercise of its right to contract out for goods and services, and Article 22.1(b) provides that "permanent employees affected by the State's exercise of its right to contract out for goods and services will receive 60 days written notice of intended separation and will be offered a redeployment option. . . ." *Id.* ¶¶ 48–49.

**4.** Specifically, plaintiff contends that Kalinsky's instructions violate "the common law, the Governor's Executive Order # 131 [9 N.Y.C.R.R. § 4.131], the Alcoholic Beverage Control Law, the Rules of the State Liquor Authority, and the Manual for Administrative Law Judges and Hearing Officers." Compl. ¶ 21.

defendant Noreen Healy "intentionally and maliciously misrepresented [plaintiff's] memo." *Id.* ¶¶ 37–39.

On October 28, 2010, Governor Paterson announced layoffs of 898 State employees, "breaking a promise that he made to the unions." *Id.* ¶ 40. On November 18, 2010, plaintiff and the only other two unionized, competitive Civil Service ALJs at the Division were notified by Human Resources Director Daniel J. Cunningham that their positions would be eliminated effective January 1, 2011. *Id.* ¶ 41. The same notice provided that, in accordance with the Civil Service Law, plaintiff had the right to be *offered reassignment to* "a temporary hourly Hearing Officer position." *Id.* ¶ 42.[5] On December 9, 2010, Cunningham handed plaintiff his final notice. *Id.* ¶ 43 ("[D]ue to the serious nature of the fiscal issues facing the State of New York, your position of Hearing Officer will be abolished resulting in your elimination from the agency effective beginning of business January 1, 2011.")

Plaintiff alleges, upon information and belief, that no workforce reductions were required of the State Liquor Authority by the Governor. *Id.* ¶¶ 44, 45 (citing Testimony of Dennis Rosen, Ex. 7 ("[T]he SLA is the third highest revenue generating agency in the state. The revenue we raise exceeds our expenditures by about $35 million annually.")). He alleges that defendants' "workforce reduction" was "nothing more than a termination or dismissal [of plaintiff] for 'cause'—the evidentiary rulings of the Plaintiff that the Defendants did not like." *Id.* ¶ 45. Additionally, plaintiff characterizes the workforce reduction as a "blatant attempt by the State Liquor Authority to create a 'Kangaroo Court' of 'hourly' Hearing Officers" without the contracts, protections, and benefits of unionized, competitive civil service employees. *Id.* ¶¶ 52–56.

■ On the basis of these allegations, plaintiff asserts three federal causes of action. First, plaintiff contends that defendants eliminated his position in retaliation for plaintiff's exercise of his First Amendment rights. To state a claim for First Amendment retaliation, a public employee must establish that "(1) his speech was constitutionally protected, (2) he suffered an adverse employment decision, and (3) a causal connection existed between the speech and the adverse employment decision, so that it can be said that [his] speech was the motivating factor in the determination."[6] *Porr v. Daman,* 299 Fed.Appx.

---

**5.** Plaintiff conceded during oral argument and in letter-briefing that he has accepted an ALJ position at the New York State Office of Temporary and Disability Assistance ("OTDA") that offers the same salary and benefits as plaintiff's previous position. Pl. Letter–Brief at 4, Docket No. 15.

**6.** In the Court's January 11, 2011 Memorandum explaining its decision to deny plaintiff's motion for a preliminary injunction, the Court noted that it found plaintiff's First Amendment retaliation claim implausible in part because plaintiff alleged that "his position was eliminated, pursuant to state-wide budget cuts, many months after he wrote a memorandum that allegedly displeased his superiors." 01/11/11 Mem. at 5. During oral argument on the instant motion to dismiss,

plaintiff pointed out that although his position was *eliminated* on January 1, 2011, he received *notice* of the workforce reduction on November 18, 2010, about six weeks after the controversy surrounding plaintiff's memorandum. *See* 02/17/11 Transcript. The Court agrees with plaintiff that the closer temporal proximity between the memorandum and the notice of the workforce reduction renders plaintiff's allegations of a causal connection between his speech and the elimination of his position slightly more plausible. However, in now considering the legal merits of plaintiff's claims (which the Court expressly declined to do before receiving full briefing on defendant's motion to dismiss), the Court finds that plaintiff's First Amendment retaliation claim clearly must still fail for the reasons set forth in this Memorandum Order.

84, 85 (2d Cir.2008). Defendants move to dismiss this claim on the ground that plaintiff's allegations fail even to satisfy the first element of this standard, viz., that plaintiff's speech is constitutionally protected. Defendants' Memorandum of Law in Support of Motion to Dismiss ("Def. Mem.") at 7–8.

■ An employee's speech is constitutionally protected if he is speaking as a citizen on a matter of public concern. *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos,* 547 U.S. 410, 421, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). Speech that is " 'part-and-parcel of [the employee's] concerns' about his ability to 'properly execute his duties' " is speech made pursuant to the employee's official duties and therefore unprotected. *Weintraub v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.,* 593 F.3d 196, 203 (2d Cir.2010) (citations omitted).

■ In this case, the alleged disagreement between plaintiff and the Commissioners about the manner in which plaintiff conducted and decided administrative proceedings falls squarely within plaintiff's official job duties as an ALJ. Def. Mem. at 8. Indeed, the Second Circuit reached this very conclusion in the recent case of *Glicksman v. N.Y.C. Envtl. Control Bd.,* 345 Fed.Appx. 688, 690 (2d Cir.2009) (summary order). The plaintiff in *Glicksman* was a New York City ALJ at the New York City Taxi and Limousine Commission ("TLC"). *Id.* at 690. Glicksman claimed it would have been illegal and/or inappropriate for him to follow TCL adjudication procedures at inquest proceedings, and de-

fendants terminated him for his refusal to do so. *Id.* In affirming the district court's grant of summary judgment to the defendants, the Second Circuit held that "the speech at issue falls squarely within the scope of Glicksman's official duties as an administrative law judge—deciding cases." *Id.* Similarly, *Garcetti* itself involved an attorney who wrote a memorandum explaining his concerns regarding alleged inaccuracies in an affidavit used to obtain a search warrant; the Supreme Court held that the attorney spoke "pursuant to his duties" because he "spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case." *Garcetti,* 547 U.S. at 421, 126 S.Ct. 1951. It is therefore clear that plaintiff spoke pursuant to his official duties when he voiced his opinions regarding his evidentiary rulings, and under *Garcetti* such speech is not constitutionally protected.

Plaintiff nonetheless argues that *Garcetti* does not apply when an employee refuses a supervisor's instructions to engage in blatantly wrongful acts. *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Mem.") at 12. In support of this proposition, plaintiff cites *Fierro v. City of New York,* 591 F.Supp.2d 431 (S.D.N.Y.2008), *rev'd in part,* 341 Fed.Appx. 696 (2d Cir.2009), a case in which plaintiff alleged that he suffered an adverse employment action for "refusing to participate in or facilitate [defendant's] campaigns to ruin the careers of two very good teachers whom [defendant] did not like." *Id.* at 441. Judge Scheindlin denied defendants' motion to dismiss plaintiff's First Amendment retaliation claim, stating:

This case is patently distinguishable from *Garcetti* .... When a public employee resists a supervisor's order to commit a wrongful (perhaps criminal)

act, that refusal cannot constitute insubordination that can or should be subject to employer discipline based on the employer's reaction to the refusal. In *Garcetti*, the Supreme Court struck a balance between an individual's right to free speech under the First Amendment and a public employer's need for a "significant degree of control over their employee's words and actions" because "without it, there would be little chance for the efficient provision of public services." Where an employer—or as here, a supervisor—wrongfully directs its employee to undertake serious misconduct, it cannot be said that it is exercising its legitimate need for control over its employee. As such, the balance sought and struck by the *Garcetti* Court simply does not apply.

*Id.* at 442.

■ The district court's decision *Fierro* was reversed on the ground of qualified immunity, and the Second Circuit has not yet addressed the question of whether speech resulting from an employer's instruction to commit a wrongful act falls under *Garcetti*. *See Fierro v. City of New York*, 341 Fed.Appx. 696, 698 (2d Cir.2009) ("Without addressing the substantive question of whether a public employee's refusal to abide by an instruction to engage in

misconduct is protected speech under the First Amendment, such protection was certainly not clearly established at the time Bleadon engaged in her allegedly retaliatory conduct."). It has, however, expressed skepticism regarding the *Fierro* Court's interpretation of *Garcetti*. *See Glicksman*, 345 Fed.Appx. at 691.[7] Although unpersuaded by the district court's opinion in *Fierro*, this Court finds that it need not reach the issue, because, as the Court of Appeals stated in *Glicksman*, "*Garcetti* made clear that an employee's mere disagreement with government policy does not give him license to carry out his employment as he sees fit (and specifically, to disregard agency policy because there may be a colorable argument as to its impropriety) merely because such employment involves speech." *Id.*

In this case, it cannot be said that defendants directed plaintiff to commit "blatantly wrongful acts." *Cf. Fierro*, 591 F.Supp.2d at 442. Legal professionals may reasonably disagree concerning the application of traditional rules of evidence to agency administrative proceedings, *cf.* Rule 1101, Fed.R.Evid. (holding the federal rules of evidence applicable to certain proceedings and not to others), and to the degree of discretion to be given to ALJs to make evidentiary determinations.[8] Thus,

---

7. "Even assuming that *Garcetti* left open the possibility that a public employee's refusal to engage in clearly wrongful conduct while acting within his job responsibilities may be protected speech, *but see Garcetti*, 547 U.S. at 425–26, 126 S.Ct. 1951 (noting that a powerful network of legislative enactments, such as whistle-blower protection law and labor codes, available to those who seek to expose wrongdoing, 'as well as obligations arising from … other applicable constitutional provisions and mandates of the criminal and civil laws, protect employees and *provide checks on supervisors who would order unlawful or otherwise inappropriate actions*' (emphasis added)), we need not reach the issue."

8. *See, e.g., Gray v. Adduci*, 73 N.Y.2d 741, 742–43, 536 N.Y.S.2d 40, 532 N.E.2d 1268 (N.Y.1988) ("Hearsay evidence can be the basis of an administrative determination…. The quantum of evidence before the Administrative Law Judge was substantial since a reasonable mind could accept the report as 'adequate to support a conclusion or ultimate fact'…."); *Frankel v. Jorling*, 148 A.D.2d 776, 778–79, 538 N.Y.S.2d 357 (N.Y.App.Div. 1989) ("We also find no merit to petitioner's contention that the administrative hearing was conducted in violation of lawful procedure because the Administrative Law Judge (hereinafter ALJ) made improper evidentiary and procedural rulings in admitting into evi-

even assuming that the district court's interpretation of *Garcetti* in *Fierro* is correct, plaintiff has not demonstrated that he was instructed to perform blatantly illegal or otherwise inappropriate acts. His refusal to give evidentiary weight to certain documents is therefore not protected speech, and plaintiff's claim for First Amendment retaliation must fail as to all defendants.

■ Plaintiff's First Amendment retaliation claim against the individual defendants in their personal capacities must also fail for the independent reason that they are protected by qualified immunity. A government official is entitled to qualified immunity where his or her discretionary conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Questions of qualified immunity involve a two-step inquiry:

> The initial question with respect to qualified immunity is whether, viewing the facts alleged in the light most favorable to the plaintiff, there was a constitutional violation. *See Clubside, Inc. v. Valentin*, 468 F.3d 144, 152 (2d Cir.2006). If the answer to that question is yes, then the Court must determine if that right was clearly established at the time the challenged decision was made, and whether the defendants' actions were objectively unreasonable. *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211 (2d Cir.2003). The Supreme Court has instructed that this

sequence of inquiry is often appropriate but is not mandatory, and courts may use their discretion to determine which of the two qualified immunity prongs should be addressed first "in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009). *Fierro v. City of New York*, 341 Fed.Appx. 696 (2d Cir.2009).

■ One of the individual defendants in *Fierro*, Ronna Bleadon, appealed the district court's decision on the ground that she was entitled to qualified immunity. *Fierro*, 341 Fed.Appx. at 697. The Second Circuit agreed, reversing the district court on the second prong of the qualified immunity analysis. *Id.* at 698. Without addressing the question of whether a public employee's refusal to follow an instruction to engage in blatantly illegal actions is protected by the First Amendment, the Second Circuit found that "such protection was certainly not clearly established at the time Bleadon engaged in her allegedly retaliatory conduct." *Id.* Thus, for the reason stated by the Second Circuit, *i.e.*, that plaintiff's speech is not clearly protected by the constitution, plaintiff's claims against Dennis Rosen, Noreen Healy, and Jeanique Green in their individual capacities must also be dismissed on the ground of qualified immunity.[9]

■ The second federal claim pled in plaintiff's complaint is violation of substantive due process. Government action does not violate substantive due process unless

---

dence certain photographs without proper foundation and in refusing to admit a letter. Strict rules of evidence followed by the courts need not be adhered to in hearings before agencies (State Administrative Procedure Act § 306[1]; *see*, 6 NYCRR 622.12[e][4], [13] ). We find nothing improper in the ALJ's rulings on admissibility of the photographs and letter.

Moreover, the ALJ did make a proper inquiry of the authenticity of the photographs and letter and correctly ruled that the letter would be admissible upon proper authentication.").

9. Governor David Paterson is also named as a defendant in this action, but he is not sued in his personal capacity.

the action "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *United States v. Salerno*, 481 U.S. 739, 751, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105, 54 S.Ct. 330, 78 L.Ed. 674 (1934)). The action must be such an egregious abuse of power that it "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).[10] The right to government employment is not a fundamental right. *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 313, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) ("This Court's decisions give no support to the proposition that a right of governmental employment *per se* is fundamental."). Similarly, contractual rights are "not the type of important interests that have heretofore been accorded the protection of substantive due process." *Local 342, Long Island Pub. Serv. Employees v. Town Bd. of the Town of Huntington*, 31 F.3d 1191, 1196 (2d Cir.1994) (internal quotation marks and citations omitted). Indeed, courts in this circuit have consistently held that even where other alleged constitutional rights are implicated, terminating government employment does not "shock the conscience" and thus does not constitute a violation of substantive due process. *See, e.g., Emmerling v. Town of Richmond*, No. 09–CV–6418 CJS, 2010 WL 2998911, at *11 (W.D.N.Y. July 27, 2010) ("The right to continued public employment is not a fundamental property interest that is subject to Substantive Due Process protection."). Accordingly, plaintiff does not come close

to stating a claim for violation of substantive due process, and this claim is hereby dismissed as to all defendants. Additionally, this claim must be dismissed on the independent ground of qualified immunity against the individual defendants in their personal capacities because plaintiff has not shown that the individual defendants violated a clearly established constitutional right.

The final federal claim pled in plaintiff's complaint is violation of procedural due process. Assuming plaintiff possesses a property interest in his employment, "procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterwards." *Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 212 (2d Cir.2002) (citations omitted). In this case, plaintiff was given notice of the impending elimination of his position at an in-person meeting with Human Resources Director Daniel J. Cunningham on December 9, 2010. Compl. ¶ 43. At that meeting, "[p]laintiff had the opportunity to present his allegations regarding the reasons for his termination, and thus he was given his limited opportunity to be heard." Def. Mem. at 10. Although plaintiff argues that this meeting was insufficient because he was not provided with notice of the charges against him, defendants point out that there were no charges to be noticed in this case. "None of the 898 State employees—including the three ALJs—received 'charges.' The reduction in force was without regard to the job performance of specific employees and therefore entailed

---

**10.** *See also Breithaupt v. Abram*, 352 U.S. 432, 435, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957) (conduct that " 'shocked the conscience' and was so 'brutal' and 'offensive' that it did not comport with traditional ideas of fair play and decency" would violate substantive due process); *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (same);

*United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ("So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' . . . or interferes with rights 'implicit in the concept of ordered liberty' ") (citations omitted).

no 'charges.'" Defendants' Reply Memorandum of Law in Support of Motion to Dismiss ("Def. Reply") at 6. Thus, the December 9, 2010 meeting provided plaintiff with his requisite "limited opportunity to be heard" prior to his termination.

■ Moreover, plaintiff may now seek a full adversarial hearing if he so wishes. For example, the Agreement between the State of New York and PEF provides for grievance procedures and a full adversarial hearing before a neutral arbitrator for contract disputes. *See* Agreement § 34.4 (Def. Ex. A at 73–74). Plaintiff must avail himself of these procedures before alleging a violation of procedural due process before this Court. Additionally, New York law affords plaintiff a full adversarial hearing via an Article 78 proceeding in New York State Supreme Court. It is well-established that the Article 78 proceeding "constitutes a wholly adequate post-deprivation hearing for due process purposes." *Locurto v. Safir,* 264 F.3d 154, 175 (2d

Cir.2001).[11] Thus, it is clear that plaintiff's procedural due process claim must fail. Additionally, for the reasons stated above, this claim is dismissed against the individual defendants in their personal capacities on the ground that they are shielded by qualified immunity.

Having determined that the federal claims are entirely without merit,[12] the Court now turns to plaintiff's state law claims for breach of contract, tortious interference with contract, and intentional and/or negligent infliction of emotional distress, all of which it is appropriate for this Court to reach, both because of the familiarity it already has with this matter as a result of the preliminary injunction proceedings and because the nature of some of defendants' objections to these claims, especially as to the Eleventh Amendment, involve interpretation of the federal constitution. In addition, objections under the doctrine of qualified immunity commonly call for swift resolution, since one of the

---

11. *See also Hellenic Am. Neighborhood Action Comm. v. City of New York,* 101 F.3d 877, 881 (2d Cir.1996) ("We have held on numerous occasions that an Article 78 proceeding is a perfectly adequate postdeprivation remedy in the present situation.... Article 78 of the New York Civil Practice Law, an amalgam of the common law writs of certiorari to review, mandamus, and prohibition, provides both a hearing and a means of redress for petitioners. '[A] petitioner in an Article 78 proceeding ... is permitted to submit ... affidavits and other written proof [of their claim], and where a triable issue of fact is raised, the petitioner may obtain a trial.' *Moccio v. New York State Office of Court Admin.,* 95 F.3d 195, 202 (2d Cir.1996). Additionally, constitutional issues can be decided in Article 78 proceedings.... An Article 78 proceeding is adequate for due process purposes even though the petitioner may not be able to recover the same relief that he could in a § 1983 suit."). Additionally, it is worth noting that that "bona fide state reduction programs which terminate a large number of employees do not give rise to procedural violations" in the first instance. *Baron v. Port*

Auth. of New York and New Jersey, 977 F.Supp. 646, 651 (S.D.N.Y.1997), aff'd, 271 F.3d 81 (2d Cir.2001). *See also Dwyer v. Regan,* 793 F.2d 457, 457 (2d Cir.1986) ("[A] state may well, from time to time, decide to make its operations more efficient by abolishing or consolidating positions or by implementing a considered substantial reduction in its work force. We are not persuaded that the state must routinely provide hearings for employees whose positions are targeted for elimination whenever the state adopts such efficiency measures.").

12. The Court also notes that, as an additional ground for dismissing the federal claims against certain defendants, the Eleventh Amendment bars the Section 1983 claims against the State, the Division of Alcoholic Beverage control, and the claims for monetary damages against the individual defendants in their official capacities. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

purposes of such immunity is to protect officials from extended litigation.

 The Eleventh Amendment bars these claims against the State of New York, the Division of Alcoholic Beverage Control, and the individual defendants in their official capacities. It is well-established that the Eleventh Amendment bars all claims against the state or state entities for alleged violations of state law without the state's consent. *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 117, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ("[A] federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when—as here—the relief sought and ordered has an impact directly on the State itself."). This bar applies equally to suits against state officials in their official capacities, whether for monetary damages or injunctive relief. *See, e.g., Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court.... This bar remains in effect when state officials are sued for damages in their official capacity."); *Dube v. State Univ. of N.Y.,* 900 F.2d 587, 595 (2d Cir. 1990) ("[A] federal court's grant of injunctive relief against a state official may *not* be based on violations of state law.").

 Plaintiff appears to concede this point, *see* Pl. Mem. at 6, but argues that the Eleventh Amendment provides no immunity for state officials sued in their personal capacities. *Id.* (citing *Farid v. Smith,* 850 F.2d 917, 920–23 (2d Cir.1988)). Again, however, it is unnecessary to reach this question, because the state law claims against the individual defendants in their personal capacities must be dismissed on the basis of qualified immunity. "New York law ... grant[s] government officials qualified immunity on state-law claims ex-

cept where the officials' actions are undertaken in bad faith or without a reasonable basis." *Papineau v. Parmley,* 465 F.3d 46, 63 (2d Cir.2006). Given that the defendants in this case implemented the mandated state-wide reductions across the board—eliminating all three ALJ positions—plaintiff cannot plausibly claim he was singled out "in bad faith or without a reasonable basis." Accordingly, the state-law claims against the individual defendants in their personal capacities must be dismissed as well.

In sum, the Court finds that all of plaintiff's claims must be dismissed as a matter of law, and the entire complaint is therefore dismissed with prejudice. Clerk of the Court to enter judgment.

SO ORDERED.